IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

\* \* \* \* \* \* \* \* \*

SHERYL CLARK,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　Plaintiff,　　　　　)　　　Civil No. 2:05-CV-0350BSJ
　　　　　　　　　　　　　　　　　　　)
vs.　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)　　**MEMORANDUM OPINION**
SUMMIT COUNTY SHERIFF, DAVID　　　)　　**& ORDER**
EDMUNDS, individually and in his　　　)
representative capacity, and SUMMIT　　)
COUNTY,　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　Defendants.　　　　)

> **FILED**
> CLERK, U.S. DISTRICT COURT
> January 10, 2007 (10:56am)
> DISTRICT OF UTAH

\* \* \* \* \* \* \* \* \*

The plaintiff, Sheryl Clark, filed the instant action against the defendants under 42 U.S.C.

§ 1983 (2000) on April 15, 2005.  On March 3, 2006, the defendants filed a motion for summary

judgment, which was heard on April 24, 2006.  At that time, the court heard the arguments of

counsel and took the matter under advisement.  Having reviewed and considered the memoranda

and exhibits submitted by counsel and upon further consideration of the arguments presented, the

court now rules that the defendants have demonstrated that there exists no genuine issue of

material fact and that they are entitled to judgment as a matter of law on Clark's federal law

claims.

**SUMMARY JUDGMENT**

As the court of appeals recently explained in *Faustin v. City and County of Denver,*

*Colo.*, 423 F.3d 1192 (10th Cir. 2005):

"Summary judgment is proper if the evidence submitted by the parties, viewed in the light most favorable to the non-movant, indicates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998) citing Fed.R.Civ.P. 56(c). "A fact is material if under the relevant substantive law it is essential to proper disposition of the claim." *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only material factual disputes can create a genuine issue for trial and preclude summary judgment. *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991). . . .

*Id.* at 1198. As the Supreme Court elaborated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), "the substantive law will identify which facts are material. Only disputes over *facts that might affect the outcome of the suit under the governing law* will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248 (emphasis added). *See also Chasteen v. UNISIA JECS Corp.*, 216 F.3d 1212, 1216 (10th Cir. 2000) ("A 'material fact' is one which could have an impact on the outcome of the lawsuit, while a 'genuine issue' of such a material fact exists if a rational jury could find in favor of the non-moving party based on the evidence presented.").

The court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). "The summary judgment material relied upon by the nonmovant is viewed in the light most favorable to him, but that material must contain significantly probative evidence that would allow a trier of fact to find in his favor," *Belcher v. Boeing Commercial Airplane Group*, 105 Fed.Appx. 222, *225, 2004 WL 1472812, **2 (10th Cir. 2004) (citing *Anderson*, 477 U.S. at 249-50 (1986)). "[F]ailure of proof of an essential element renders all other facts immaterial," *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1212 (10th Cir. 2000), and "[f]actual disputes about immaterial matters are irrelevant to a summary judgment determination." *Frank v. U.S. West, Inc.*, 3 F.3d

1357, 1361 (10th Cir. 1993) (citing *Anderson*, 477 U.S. at 248).

"To determine what facts are material to summary judgment disposition, we look to the primary issues in this case[.]" *Lighton v. University of Utah*, 209 F.3d 1213, 1226 (10th Cir. 2000).  When a defendant raises a qualified immunity defense – as Sheriff Edmunds has in this case – a "heavy two-part burden" must be overcome by the plaintiff.  *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (quoting *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995)).

> Plaintiff must first establish that "the facts alleged [taken in the light most favorable to the nonmoving party] show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Medina*, 252 F.3d at 1128.  Second, Plaintiff must demonstrate that the right was "clearly established." *Id.*

*Phillips v. James*, 422 F.3d 1075, 1080 (10th Cir. 2005).

### THE JANUARY 15, 2003 INCIDENT

On January 15, 2003, at approximately 7:00 p.m., Summit County Sheriff David Edmunds, and Deputy Sheriffs Andrew Leatham and Jim Fowers entered the office area of Ms. Clark's motel in Coalville, Utah, a portion of which also served as her residence, for the purpose of taking Clark's adult daughter into protective custody in aid of an emergency psychological evaluation based upon articulated concerns that she may be suicidal.[1]  Ms. Clark's daughter stepped outside of the office area with the officers, where they advised her that they were taking her into custody.  She initially protested being taken into custody, but then elected to go with the officers voluntarily.  She asked to go back inside the building to reassure her children, and did so,

---

[1] This factual narrative is derived from the defendants' "Statement of Undisputed Material Facts," set forth in the Memorandum in Support of Defendants' Motion for Summary Judgment, filed March 3, 2006 (dkt. No. 26), at 1-11 ¶¶ 19-27, 29, 31-48.

accompanied by Sheriff Edmunds.  She stopped in the bathroom to brush her teeth, with Sheriff

Edmunds standing in the doorway observing her.

Ms. Clark offered to take her daughter in for the psychological evaluation herself, an offer

that the Sheriff apparently declined in favor of making certain that she was transported for

immediate evaluation.  Clark's daughter then became argumentative, and Sheriff Edmunds took

hold of her by the arm and began to lead her out of the bathroom area toward the front door of

Clark's residence.  She reacted loudly, and Clark, who had turned away from the two of them and

was moving out of their way, turned back to face Sheriff Edmunds, moving toward him and her

daughter.  Edmunds, in turn, put out his right arm in a stiff-arm motion to deflect Clark from his

path to the front door, shoving Clark back.  Clark stumbled backwards, hitting a dining room

table and chair, either as a direct result of the push or of tripping over the chair and losing her

balance.  Edmunds continued to escort Clark's daughter outside the building, where he ordered

her handcuffed and taken to the University of Utah Hospital.  He then stepped back inside

Clark's residence area to explain to Clark what was happening to her daughter. At that time,

Clark gave no indication that she had been hurt as a result of the shove by Sheriff Edmunds.

Ms. Clark's daughter was interviewed by medical personnel at the University of Utah

Hospital and was subsequently released.  Clark drove from Coalville to the hospital in Salt Lake

City, picked up her daughter and returned to Coalville.

Ms. Clark now alleges significant, permanent and disabling injury resulting from having

been shoved by Sheriff Edmunds and colliding with the table and chair.  She asserts that Sheriff

Edmunds entered her residence without lawful authority and used excessive force against her in

violation of her rights under the Fourth and Fourteenth Amendments.

-4-

This case does not enjoy the luxury of a home video recording of the actual incident already posted on YouTube.com for all to see.  The historical facts of this event must be reconstructed from the memories of live witnesses who were there.  Memories vary, and recollections are imperfect at best.  Not surprisingly, the plaintiff's account of the incident differs somewhat from that of the law officers involved.

Yet in arriving at Ms. Clark's "version of the facts" for purposes of this inquiry, the court begins by noting that plaintiff did not dispute many of the facts set forth in the "Statement of Undisputed Material Facts" accompanying defendants' motion for summary judgment, particularly those involving the incident itself.  (*See* Memorandum in Opposition to Defendant's Motion for Summary Judgment, filed April 4, 2006 (dkt. no. 30), at 1-2 ¶¶ 1, 6, 8 ("Plaintiff does not contest Defendant's facts 1-16, . . .18-27, . . . 29-48.")  To the extent that Clark did not controvert these facts, they must be deemed admitted for purposes of the summary judgment inquiry.  *See* DUCivR 56-1(c);[2] *cf. Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001) (stating reviewing court need not look solely to plaintiff's version of facts where facts are undisputed).

"With all that said, we must remember to view this litigation through the prism of qualified immunity.  The first step is to determine whether, based on the allegations, a constitutional violation can be found.  The second step is to determine if 'the law . . . put the officer[s] on notice that [their] conduct would be clearly unlawful.' *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151." *Cortez v. McCauley*, 438 F.3d 980, 993-94 (10th Cir. 2006); *see also Holland*

---

[2]DUCivR 56-1(c) reads in part: "All material facts of record meeting the requirements of Fed. R. Civ. P. 56 that are set forth with particularity in the statement of the movant will be deemed admitted for the purpose of summary judgment, unless specifically controverted by the statement of the opposing party identifying material facts of record meeting the requirements of Fed. R. Civ. P. 56."

*ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001) (explaining that a plaintiff's failure to establish the first prong is sufficient grounds for granting qualified immunity).  The nature of qualified immunity recognizes, for example, that "a defendant officer could use force in making an arrest that is later judged to be excessive enough that it violates the Fourth Amendment" and the court would still have to grant the defendant qualified immunity "if prior decisions did not clearly establish that the use of that force in those circumstances was constitutionally excessive."  *Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir. 2002).

**FOURTH AMENDMENT "SEIZURE"**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const., Amend. IV.  "To state a claim under the Fourth Amendment, plaintiffs must show both that a 'seizure' occurred and that the seizure was 'unreasonable.'"  *Childress v. City of Arapaho*, 210 F.3d 1154, 1156 (10th Cir. 2000) (citing *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989)).

> "Violation of the Fourth Amendment requires an intentional acquisition of physical control."  *Brower v. County of Inyo*, 489 U.S. 593, 596, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989).  One need not be the target of a search or be the person named in an arrest warrant to be "seized" within the meaning of the Fourth Amendment: "A seizure occurs even when an unintended person or thing is the object of the detention or taking, . . . but the detention or taking itself must be willful."  *Id.* (citations omitted).  Thus, each of the plaintiffs was "seized" during the April 16 raid if "there is a governmental termination of [plaintiff's] freedom of movement *through means intentionally applied*," regardless of whether he or she was the subject of an arrest warrant or was ultimately placed under arrest.  *Id.* at 597, 109 S.Ct. 1378 (emphasis in original).

*Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1187 (10th Cir. 2001) (footnote omitted).  One's freedom of movement is terminated "'if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to

-6-

leave,'" *Brower*, 489 U.S. at 600 (Stevens, Brennan, Marshall & Blackmun, JJ., concurring in the

judgment) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (Stewart, J.)), and the

police have applied physical force, however slight, or the person has submitted to a show of

authority by the police. *California v. Hodari D.*, 499 U.S. 621, 623-29 (1991); *see also* 1 Wayne

R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 2.1(a), at 375-81 (3d ed.

1996).

    The uncontroverted facts in the record clearly reflect that Ms. Clark's adult daughter had

been "seized" under the Fourth Amendment when she was taken into "protective custody" by

Sheriff Edmunds and his deputies outside the motel building.  She remained "seized," that is, in

custody, upon re-entering the residence area accompanied by Sheriff Edmunds and while being

escorted back outside the residence by Edmunds.  And she remained in custody while being

transported to the hospital by his deputies.

    Once she had been taken into custody, the officers could lawfully accompany her as she

re-entered Clark's residence, both to maintain custody and ensure her safety and their own. *See*

*Washington v. Chrisman*, 455 U.S. 1, 6 (1982); *United States v. Butler*, 980 F.2d 619 (10th Cir.

1992); *United States v. Di Stefano*, 555 F.2d 1094, 1101 (2d Cir. 1977).  According to the facts

stated by the parties, Clark did not object or otherwise attempt to resist her daughter's re-entry

into the residence area of the premises in the company of the officers.  Nor did she ask them to

leave.[3]

---

[3]Clark's Memorandum states that "Sheriff Edmunds did not ask for consent to enter Ms. Clark's home.  He was inside her residence before any words were exchanged at all, and he indicated that she had no choice but to comply with his chosen course of action," citing to Clark's deposition 64:12-67:11.  (Memorandum in Opposition to Defendant's Motion for Summary Judgment, filed April 4, 2006 (dkt. no. 30), at 3 ¶ 12.)  But the cited testimony describes the officers' initial entry into the motel office area–an area open to the public–where the officers asked Clark's daughter to

(continued...)

-7-

The uncontroverted facts likewise reflect that at no time during the January 15, 2003 incident was Ms. Clark "seized" within the meaning of the Fourth Amendment, applying the standard articulated in *Holland*.[4]

That being so, Clark's Fourth Amendment claim under § 1983 must turn on whether such an application of force in effecting Sheriff Edmunds' seizure of Clark's daughter, who was in Edmunds' custody at the time that he pushed Clark away, is cognizable under the Fourth Amendment. If it is not, then Clark's § 1983 claim depends upon a showing of official conduct that "shocks the conscience," violating Clark's rights under the Due Process Clause of the Fourteenth Amendment. *See, e.g., County of Sacramento v. Lewis*, 523 U.S. 833, 844-50 (1998); *Childress*, 210 F.3d at 1157-58. Where deliberation by the officer is not a possibility, that is, where the officer's conduct was instinctive and spontaneous, "only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." *Lewis*, 523 U.S. at 836.

Defendants point out that the Sixth Circuit has concluded that "the Fourth Amendment 'reasonableness' standard does not apply to section 1983 claims which seek remuneration for physical injuries inadvertently inflicted upon an innocent third party by police officers' use of force while attempting to seize a perpetrator, because the authorities could not 'seize' any person

---

[3](...continued)
accompany them outside the building, as recounted in defendants' statement of facts citing the same testimony. (*See* Memorandum in Support of Defendants' Motion for Summary Judgment, filed March 3, 2006 (dkt. No. 26), at 5 ¶¶ 19-20.) Clark's testimony at pages 72-75 of her deposition concerning her daughter's subsequent re-entry into the residence area accompanied by Edmunds corresponds with the defendants' narrative of the incident, which Clark did not dispute. (*See id.* at 6 ¶¶ 22-27.)

[4]Nor were the officers conducting a search of Clark's residence. *Cf. Specht v. Jensen*, 832 F.2d 1516 (10th Cir. 1987), *judgment vacated on other grounds en banc*, 853 F.2d 805 (10th Cir. 1988), *cert. denied*, 488 U.S. 1008 (1989).

other than one who was a deliberate object of their exertion of force." *Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000) (citing *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989)); *see also Medeiros v. O'Connell*, 150 F.3d 164, 169 (2d Cir. 1998) (noting that "where no seizure within the meaning of the Fourth Amendment has taken place, substantive due process analysis is appropriate").

Clark cites no controlling Tenth Circuit authority to the contrary, and the existing Tenth Circuit case law involving § 1983 claims for injuries to bystanders in the course of a police seizure of another person who was the "deliberate object of their exertion of force" treats such claims under the Due Process Clause of the Fourteenth Amendment, not under the Fourth Amendment. *See, e.g., Childress*, 210 F.3d at 1156-57; *Radecki v. Barela*, 146 F.3d 1227, 1229-32 (10th Cir. 1998); *Bella v. Chamberlain*, 24 F.3d 1251, 1257 (10th Cir. 1994) (stating that "we assume that excessive force claims arising outside the context of a seizure still may be analyzed under substantive due process principles").

### CONDUCT "SHOCKING THE CONSCIENCE"

As the Court explained in *County of Sacramento v. Lewis*,

> [T]he substantive component of the Due Process Clause is violated by executive action only when it "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." While the measure of what is conscience shocking is no calibrated yard stick, it does, as Judge Friendly put it, "poin[t] the way."

523 U.S. at 847 (quoting *Collins v. Harker Heights*, 503 U.S. 115, 128 (1992), and *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973)). As the *Lewis* Court explains:

> It should not be surprising that the constitutional concept of conscience

-9-

shocking duplicates no traditional category of common-law fault, but rather points
clearly away from liability, or clearly toward it, only at the ends of the tort law's
spectrum of culpability.  Thus, we have made it clear that the due process
guarantee does not entail a body of constitutional law imposing liability whenever
someone cloaked with state authority causes harm. . . .  We have accordingly
rejected the lowest common denominator of customary tort liability as any mark
of sufficiently shocking conduct, and have held that the Constitution does not
guarantee due care on the part of state officials; liability for negligently inflicted
harm is categorically beneath the threshold of constitutional due process. . . .  It is,
on the contrary, behavior at the other end of the culpability spectrum that would
most probably support a substantive due process claim; conduct intended to injure
in some way unjustifiable by any government interest is the sort of official action
most likely to rise to the conscience-shocking level.

*Id.* at 848-49.

What conduct may shock the conscience depends on context and circumstance.  "[W]hen

unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness

fails to inch close enough to harmful purpose to spark the shock that implicates 'the large

concerns of the governors and the governed.'"  *Id.* at 853 (quoting *Daniels v. Williams*, 474 U.S.

327, 332 (1986)).

*Lewis* thus "points our inquiry to the official's opportunity for deliberation," and "in

assessing the constitutionality of law enforcement actions, we now distinguish between

emergency action and actions taken after opportunity for reflection."  *Radecki*, 146 F.3d at 1231.

"Appropriately, we are required to give great deference to the decisions that necessarily occur in

emergency situations."  *Id.* at 1231-32.

Henceforth, we look to the nature of the official conduct on the spectrum
of culpability that has tort liability at one end.  On the opposite, far side of that
spectrum is conduct in which the government official intended to cause harm and
in which the state lacks any justifiable interest.  In emergency situations, only
conduct that reaches that far point will shock the conscience and result in
constitutional liability.  Where the state actor has the luxury to truly deliberate
about the decisions he or she is making, something less than unjustifiable intent to

harm, such as calculated indifference, may suffice to shock the conscience.

*Id.* at 1232.

Thus, absent an opportunity for deliberative choice on the part of Sheriff Edmunds, no "excessive force" claim can lie under the Due Process Clause of the Fourteenth Amendment unless his conduct was unjustified by any government interest and was "tainted by an improper or malicious motive." *Lewis*, 523 U.S. at 855.

At the time that he pushed Clark away, Sheriff Edmunds had a legitimate interest in maintaining custody of Clark's daughter as he escorted her from Clark's residence to a waiting law enforcement vehicle. His split-second decision to respond by clearing his path at the moment that Clark turned back toward him served that interest, regardless of whether Clark actually intended to interfere with his seizure of her daughter or not.

Nor has Clark raised a genuine issue of material fact concerning whether Edmunds action was "tainted by an improper or malicious motive," that is, that he intended to cause her harm,[5] and thus she cannot establish that Edmunds' conduct "shocks the conscience" under the standard articulated in *Lewis* and *Radecki*.

As the Supreme Court concluded in *Lewis*, regardless of whether Edmunds' conduct "offended the reasonableness held up by tort law," it "does not shock the conscience," and the

---

[5]Clark argues that "[b]ecause Sheriff Edmunds had no legal basis for the encounter, his very decision to interfere with a private decision in her own home was arguably malicious," ((Memorandum in Opposition to Defendant's Motion for Summary Judgment, filed April 4, 2006 (dkt. no. 30), at 9), overlooking the fact that Clark's daughter consented to being taken into custody before re-entering Clark's residence with Edmunds–a fact Clark did not dispute. (*See id.* at 2 ¶ 6 ("Plaintiff does not contest Defendant's facts 18-27."); Memorandum in Support of Defendants' Motion for Summary Judgment, filed March 3, 2006 (dkt. No. 26), at 6 ¶¶ 22-23 ("Eventually [she] agreed to go voluntarily, but requested that she be allowed to go inside . . . . Sheriff Edmunds agreed and allowed [her] to go back inside, where she went into the bathroom and began to brush her teeth.").) In any event, the fact that Edmunds accompanied Clark's daughter back inside the residence does not raise a genuine issue of fact concerning any intent on his part to cause harm to Clark.

-11-

defendants "are not called upon to answer for it under § 1983." *Lewis*, 523 U.S. at 855.[6]

Having established no constitutional violation, Clark cannot sustain the first of the two-part showing required to rebut the defendants' assertion of qualified immunity. Sheriff Edmunds is entitled to summary judgment based upon his qualified immunity defense.

**COUNTY LIABILITY**

Plaintiffs' suit against Sheriff Edmunds in his official capacity is equivalent to a suit against Summit County itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). "[A] plaintiff suing a county under section 1983 for the actions of one of its officers must demonstrate two elements: (1) a municipal employee committed a constitutional violation, and (2) a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Okla. County Bd. of County Comm'rs*, 151 F.3d 1313, 1318 (10th Cir. 1998). Liability thus can be imposed on the County only if (1) a constitutional violation occurred, *see City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam), and (2) the violation was caused by a government policy or custom, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A government policy or custom may be manifested either in the acts of "its lawmakers

---

[6]The same result would likely be reached under the Fourth Amendment "reasonableness" standard, if applied in this context:

> The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . . With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments– in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.

*Graham v. Connor*, 490 U.S. 386, 396-97 (1989).

or by those whose edicts or acts may fairly be said to represent official policy." *Id.* at 694.

Part IV of the defendants' Memorandum reiterates these principles, and points out that "[h]ere there are no allegations, much less any evidence tending to show" inadequate training or any other "policy" basis for County liability under § 1983. (Memorandum in Support of Defendants' Motion for Summary Judgment, filed March 3, 2006 (dkt. no. 26), at 26-27.)

Clark does not contest this assertion, and the County is entitled to summary judgment on Clark's § 1983 claim.

### CLARK'S STATE CONSTITUTIONAL CLAIM

Clark also pleaded a claim against the defendants under the provision of Article I , § 9 of the Utah Constitution requiring that "[p]ersons arrested or imprisoned shall not be treated with unnecessary rigor." Article I, § 9 is "a self-executing provision that prohibits specific evils that can be remedied without implementing legislation." *State v. Lafferty*, 2001 UT 19, ¶ 73, 20 P.3d 342, 365.

The defendants argue that Clark's "unnecessary rigor" claim nonetheless must fail because Clark was not "seized" during the January 15, 2003 incident, and thus could not have been "arrested" or "imprisoned" by the defendants within the meaning of this provision. (Memorandum in Support of Defendants' Motion for Summary Judgment, filed March 3, 2006 (dkt. No. 26), at 25.)

Though the defendants' point appears to be well taken, the evolving State constitutional jurisprudence of this provision has not yet addressed whether the scope of this "guarantee against unnecessarily rigorous treatment," which "extends both to prisoners and to arrestees and protects

-13-

them against unnecessary abuse,"[7] extends as well to persons who themselves have not been "arrested" or "imprisoned" as those terms are commonly understood.  Nor have the Utah courts addressed whether being "arrested" under Article I, § 9 is co-extensive in its meaning with being "seized" under the Fourth Amendment to the United States Constitution.[8]

This court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over this State constitutional claim of first impression, raising as it does "a novel . . . issue of State law." 28 U.S.C. § 1367(c)(1).

For the foregoing reasons,

**IT IS ORDERED** that the defendant's motion for summary judgment is GRANTED and plaintiff's claims under 42 U.S.C. 0§ 1983 shall be DISMISSED with prejudice.  The court declines to exercise supplemental jurisdiction over plaintiff's claim arising under Article I, Section 9 of the Utah Constitution, and that claim is DISMISSED without prejudice.  *See* 28 U.S.C. § 1367(c).

Let judgment be entered accordingly.

DATED this *10* day of January, 2007.

BY THE COURT:

BRUCE S. JENKINS
United States Senior District Judge

---

[7]*Bott v. DeLand*, 922 P.2d 732, 737 (Utah 1996) (abrogated in part on other grounds by *Spackman ex rel. Spackman v. Board of Educ. of Box Elder County School Dist.*, 2000 UT 87, 16 P.3d 533).

[8]Nor does counsel explain how Clark's "unnecessary rigor" claim satisfies the existing common-law criteria for recovering damages for a State constitutional tort. *See Spackman ex rel. Spackman v. Board of Educ. of Box Elder County School Dist.*, 2000 UT 87, ¶¶ 20-26, 16 P.3d 533, 537-39.

-14-